1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                        **EASTERN DIVISION**

11

12  KENNETH L. BARNARD,            )      No. EDCV 05-1176 (CW)
                                   )
13              Plaintiff,         )      DECISION AND ORDER
           v.                      )
14                                 )
    JO ANNE B. BARNHART,           )
15  Commissioner, Social Security )
    Administration,                )
16                                 )
                Defendant.         )
17  _____)

18

19      The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  As

22  discussed below, the court finds that the Commissioner's decision

23  should be reversed and this matter remanded for further proceedings.

24                    **I.   BACKGROUND**

25      Plaintiff Kenneth Barnard was born on February 26, 1970, and was

26  thirty-five years old at the time of his most recent administrative

27  hearing. [Administrative Record, "AR," 113, 333.]  He has a high

28  school education and past relevant work experience as a truck driver,

1

1  security guard, telemarketer and warehouse person. [AR 13.]
2  Plaintiff alleges disability on the basis of bipolar disorder, manic
3  depression, high blood pressure and anxiety. [AR 136.]

4  **II.  PROCEEDINGS IN THIS COURT**

5      Plaintiff's complaint was lodged on December 28, 2005, and filed
6  on January 18, 2006.  On July 18, 2006, defendant filed an answer and
7  plaintiff's Administrative Record ("AR").  On September 25, 2006, the
8  parties filed their Joint Stipulation ("JS") identifying matters not
9  in dispute, issues in dispute, the positions of the parties, and the
10 relief sought by each party.  This matter has been taken under
11 submission without oral argument.

12 **III.  PRIOR ADMINISTRATIVE PROCEEDINGS**

13     Plaintiff applied for disability insurance benefits ("DIB") and
14 supplemental security income ("SSI") on June 5, 2002, alleging
15 disability since June 1, 2001.  [AR 113, 294.]  An administrative
16 hearing was held on February 9, 2004, before Administrative Law Judge
17 ("ALJ") Helen E. Hesse. [AR 300.]  Plaintiff appeared with counsel,
18 and testimony was taken from plaintiff, medical expert Craig Rath, and
19 vocational expert Louis Omas. [Id.]  The ALJ denied benefits in a
20 decision dated March 4, 2004. [AR 56-62.]  On September 17, 2004, the
21 Appeals Council remanded the case to the ALJ for further proceedings,
22 specifically, to develop the record and evaluate plaintiff's mental
23 impairments and his substance abuse disorder. [AR 81-82.]
24 Consequently, a second administrative hearing was held on March 14,
25 2005, before ALJ Hesse.  Plaintiff appeared with counsel, and
26 testimony was taken from plaintiff, medical expert Joseph
27 Malancharuvil and vocational expert Kelly Winn-Boaitey. [Id.]  The ALJ
28 again denied benefits, in a decision dated September 19, 2005. [AR 12-

2

1   17.]  When the Appeals Council denied review on November 17, 2005, the

2   ALJ's decision became the Commissioner's final decision.  [AR 5.]

3                    **IV.   STANDARD OF REVIEW**

4        Under 42 U.S.C. § 405(g), a district court may review the

5   Commissioner's decision to deny benefits.  The Commissioner's (or

6   ALJ's) findings and decision should be upheld if they are free of

7   legal error and supported by substantial evidence.  However, if the

8   court determines that a finding is based on legal error or is not

9   supported by substantial evidence in the record, the court may reject

10  the finding and set aside the decision to deny benefits.  See Aukland

11  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

12  Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

13  F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

14  1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

15  1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

16  v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

17        "Substantial evidence is more than a scintilla, but less than a

18  preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence

19  which a reasonable person might accept as adequate to support a

20  conclusion." Id.  To determine whether substantial evidence supports

21  a finding, a court must review the administrative record as a whole,

22  "weighing both the evidence that supports and the evidence that

23  detracts from the Commissioner's conclusion." Id.  "If the evidence

24  can reasonably support either affirming or reversing," the reviewing

25  court "may not substitute its judgment" for that of the Commissioner.

26  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

27

28

                                 3

1

**V.   DISCUSSION**

2

**A.   THE FIVE-STEP EVALUATION**

3

To be eligible for disability benefits a claimant must

4

demonstrate a medically determinable impairment which prevents the

5

claimant from engaging in substantial gainful activity and which is

6

expected to result in death or to last for a continuous period of at

7

least twelve months.  <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at

8

721; 42 U.S.C. § 423(d)(1)(A).

9

Disability claims are evaluated using a five-step test:

10

> Step one: Is the claimant engaging in substantial
> gainful activity?  If so, the claimant is found not

11

> disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment?

12

> If so, proceed to step three.  If not, then a finding of not
> disabled is appropriate.

13

> Step three: Does the claimant's impairment or
> combination of impairments meet or equal an impairment

14

> listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
> so, the claimant is automatically determined disabled.  If

15

> not, proceed to step four.
> Step four: Is the claimant capable of performing his

16

> past work?  If so, the claimant is not disabled.  If not,
> proceed to step five.

17

> Step five: Does the claimant have the residual
> functional capacity to perform any other work?  If so, the

18

> claimant is not disabled.  If not, the claimant is disabled.

19

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u>

20

April 9, 1996); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107

21

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Tackett</u>, 180 F.3d at 1098-99; 20

22

C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or

23

"not disabled" at any step, there is no need to complete further

24

steps.  <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.

25

Claimants have the burden of proof at steps one through four,

26

subject to the presumption that Social Security hearings are non-

27

adversarial, and to the Commissioner's affirmative duty to assist

28

4

claimants in fully developing the record even if they are represented by counsel.  <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at 1288.  If this burden is met, a <u>prima</u> <u>facie</u> case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

In her latest decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (step one); that plaintiff had "severe" impairments, namely an organic mood disorder, anxiety and a personality disorder (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 14.] The ALJ found that plaintiff had an RFC without exertional limitations but non-exertional limitations that would limit plaintiff to the performance of moderately complex tasks involving three to five steps in a habituated work environment that does not require hypervigilance or to be in charge of safety operations; and a restriction to a work environment that does not require emotionally charged contact with the public or a high production quota or rapid assembling line work, but

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

5

would allow a moderate pace. [AR 15.]   The ALJ adopted the opinion of the vocational expert, who testified that a person with such limitations could perform plaintiff's past relevant work as a telemarketer or warehouse person (step four). [AR 16.]   Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies two disputed issues:

1.   Whether the ALJ's latest RFC finding was supported by substantial evidence, given the ALJ's failure to discuss the conflict in the opinions of the two medical experts; and

2.   Whether the ALJ properly developed the record pursuant to the Appeals Council's order of remand by failing to order a consultative mental health examination. [JS 3.]

Both of these issues are addressed in the discussion below.

**D.   THE MEDICAL EXPERTS' TESTIMONY**

According to the record, plaintiff's psychiatric problems began at the age of fourteen, when he began having panic attacks and anxiety. [AR 224.]   Plaintiff began using alcohol at the age of eighteen, and his drug and alcohol abuse persisted into his adulthood. [Id.]   He claims that he was fired from several jobs due to the panic attacks [AR 157], and in June 2002, he was involuntarily hospitalized for cutting a seven-inch laceration into his left wrist. [AR 184-88.] One day after he was discharged, he was involuntarily committed again, for trying to kill himself by overdosing on alcohol. [AR 209.]   Soon thereafter, plaintiff began receiving counseling and was prescribed medication. [AR 221-41.]   In July 2002, police were summoned after plaintiff brandished a knife in response to a perceived attack at a

behavioral clinic. [AR 229-31.]  Although plaintiff made multiple

attempts to attain sobriety, he was still abusing alcohol as of 2003:

he was hospitalized for alcohol withdrawal in October 2002 [AR 251],

and he admitted on various occasions, from December 2002 to June 2003,

to drinking "a couple of beers" to a "6-pack a day." [AR 256, 257,

261.]

During the first administrative hearing in February 2004, medical

expert Craig Rath testified that the then-available record, which

ended in June 2003, made it difficult to separate the effects of

plaintiff's substance abuse from his other mental impairments because

there were no records reflecting a period of sobriety. [AR 312-313,

315.][2]  Dr. Rath concluded that plaintiff's mental residual functional

capacity, while factoring in plaintiff's substance abuse, would

include "marked" limitations in multiple areas of mental functioning,

rendering plaintiff effectively disabled. [AR 313.]  However, Dr. Rath

found that substance abuse was a contributing factor material to a

finding of disability until June 2003, and, that in the absence of

substance abuse, plaintiff's anxiety would not necessarily preclude

him from performing substantial gainful activity, but would limit him

to only incidental contact with the public, loose supervision by

---

[2]  A disability claimant is not eligible to receive benefits if drug or alcohol addiction is a "contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a). The key factor in determining whether alcoholism or drug addiction is a contributing factor material to the determination of disability is whether an individual would still be found disabled if he or she stopped using alcohol or drugs.  Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); 20 C.F.R. §404.1535(b)(1), 416.935(b)(1).  In the Ninth Circuit, such a determination must be made only after the ALJ has found the plaintiff "disabled" under the sequential evaluation.  Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001)(citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

7

1  supervisors, and no more than a moderate amount of stress in a work

2  setting. [AR 322.]  Based in part on Dr. Rath's testimony, the ALJ

3  found that plaintiff's RFC, in the absence of substance abuse, would

4  not preclude plaintiff from returning to his past relevant work as a

5  truck driver or performing other jobs in the national economy. [AR

6  60.]

7      The Appeals Council remanded the case for further administrative

8  proceedings, finding that the ALJ had not sufficiently evaluated

9  plaintiff's mental impairments nor his substance abuse disorder. [AR

10  81.]  Consequently, the ALJ held a second hearing in March 2005. [AR

11  333.]  A second medical expert, Joseph Malancharuvil, testified. [Id.]

12  Contrary to Dr. Rath's testimony, Dr. Malancharuvil testified that

13  plaintiff's substance abuse was not significant after August 2002,

14  based on plaintiff's claim that he has been "clean" since that time.

15  [AR 337.]  Dr. Malancharuvil opined that plaintiff's mental functional

16  capacity, while factoring in his excessive substance abuse, would meet

17  the requirements of disability pursuant to Listing 12.09 (Substance

18  Addiction Disorders) but that, in the absence of substance abuse,

19  plaintiff could perform substantial gainful activity, so long as it

20  was limited to three to five step tasks in a habituated setting with

21  no emotionally charged public contact, and plaintiff could avoid

22  safety operations and tasks requiring hypervigilance or excessive

23  speed. [AR 337, 339.]  The ALJ relied on Dr. Malancharuvil's testimony

24  to find that plaintiff's RFC would not preclude him from returning to

25  his past relevant work as a telemarketer or warehouse person. [AR 16.]

26  The ALJ's latest finding is not supported by substantial evidence.

27      Plaintiff argues that the ALJ's reliance on Dr. Malancharuvil's

28  testimony in the latest decision was improper because the ALJ made "no

8

1   effort to discuss the evidence provided by Dr. Rath at the first

2   hearing" nor "explain the weight given to each opinion and to

3   reconcile the differences." [JS 4.]   It is evident from the record,

4   however, that neither Dr. Malancharuvil nor Dr. Rath's testimony was

5   provided with the benefit of an accurate assessment of a complete

6   medical record.   Dr. Malancharuvil's testimony – that plaintiff's

7   substance abuse was no longer significant after August 2002 – was

8   contrary to both the record (in which plaintiff admitted to drinking

9   regularly until June 2003) and the ALJ's own findings in her first

10  decision (in which she noted reports of "continued substance

11  addiction" and "worsening of symptoms" due to "heavy alcohol use"

12  until June 2003), diminishing the testimony's evidentiary value.   See

13  Erickson v. Shalala, 9 f.3d 813, 818 and n. 7 (9th Cir. 1993)(A

14  "non-examining physician's conclusion, with nothing more, does not

15  constitute substantial evidence, particularly in view of...conflicting

16  observations, opinions, and conclusions.").   Moreover, the ALJ

17  apparently did not heed the Appeals Council's order to properly

18  evaluate plaintiff's substance abuse, as the ALJ relied in large part

19  on Dr. Malancharuvil's inaccurate assessment to decline to find that

20  plaintiff's substance abuse was a "severe" impairment and failed to

21  discuss plaintiff's substance abuse at all in the latest decision.

22  Cf. Bustamante, 262 F.3d at 955 ("[A]n ALJ must first conduct the

23  five-step inquiry without separating out the impact of alcoholism or

24  drug addiction").   As for Dr. Rath's testimony, while it may have been

25  based on an accurate assessment of the record up until June 2003, the

26  record has since been augmented to include clinical reports dated to

27  November 2004. [AR 84-112.]   These latest records indicate that

28  plaintiff continued to be diagnosed with bipolar disorder,

9

1  characterized as "severe with psychotic features," subsequent to a

2  ten-month period of sobriety as of June 2004. [AR 99, 104.]  Thus, Dr.

3  Rath's conclusion regarding plaintiff's functional capacity in the

4  absence of substance abuse, rendered "difficult" and tentative because

5  "there isn't anything in the record with [plaintiff] not on

6  substances," no longer applies here.  Accordingly, neither Dr.

7  Malancharuvil nor Dr. Rath's opinion may properly form the basis of an

8  RFC assessment, and reversal is warranted.

9       Upon remand, it will be necessary to further evaluate plaintiff's

10  functional capacity in light of the latest medical records.  It would

11  also be advisable to order a consultative psychiatric examination,

12  which the Appeals Council recommended but has not yet been

13  administered in plaintiff's case. [AR 82.]  Although an ALJ has "broad

14  latitude in ordering a consultative examination," some types of cases,

15  such as plaintiff's, "normally require" an examination by virtue of

16  the need for additional evidence to resolve an "ambiguity or

17  insufficiency in the evidence."  Reed v. Massanari, 270 F.3d 838, 842

18  (9th Cir. 2001).  An examination in this case would help clarify the

19  ambiguous issue of plaintiff's mental functional capacity under a

20  condition of sobriety.

21       **E.   REMAND FOR FURTHER PROCEEDINGS**

22       The decision whether to remand for further proceedings is within

23  the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172,

24  1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by

25  further proceedings, or where the record has been fully developed, it

26  is appropriate to exercise this discretion to direct an immediate

27  award of benefits.  Harman, 211 F.3d at 1179 (decision whether to

28  remand for further proceedings turns upon their likely utility).

1   However, where there are outstanding issues that must be resolved

2   before a determination can be made, and it is not clear from the

3   record that the ALJ would be required to find the claimant disabled if

4   all the evidence were properly evaluated, remand is appropriate.  Id.

5   Here, as set out above, outstanding issues remain before a finding of

6   disability can be made.  Accordingly, remand is appropriate.

7                               **VI.   ORDERS**

8        Accordingly, **IT IS ORDERED** that:

9        1.   The decision of the Commissioner is **REVERSED**.

10       2.   This action is **REMANDED** to defendant, pursuant to Sentence

11  Four of 42 U.S.C. § 405(g), for further proceedings as discussed

12  above.

13       3.   The Clerk of the Court shall serve this Decision and Order

14  and the Judgment herein on all parties or counsel.

15

16  DATED: September 29, 2006

17                        _____/s/_____
                                   CARLA M. WOEHRLE
18                             United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

                                    11